UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(electronically filed)

UNITED STATES OF AMERICA PLAINTIFF

V. CRIMINAL ACTION NO. 3:17CR-00068-TBR

CHICOBY SUMMERS DEFENDANT

**DEFENDANT'S MOTION**
**TO SUPPRESS SEARCHES**

Comes the defendant, Chicoby Summers, through counsel, and moves this Honorable Court to suppress all evidence obtained and statements made as a result of unlawful searches conducted at 9200 Bunsen Park Drive, Building 1, Apartment 208 on February 6, 2017, and at 7924 Zelma Fields Avenue on April 12, 2017. Search warrants were issued and executed for these two searches. The four corners of the affidavits offered in support of those warrants failed to establish probable cause in support of the warrants. All evidence obtained as a result of the execution of those warrants is subject to suppression due to the violation of Mr. Summers' Fourth Amendment rights against unreasonable searches. In support of this Motion, Mr. Summers states the following:

**Search of Bunsen Park Drive, Apartment 208**:

The affidavit in support of the search warrant issued for Apt. 208 requested a search for "Marijuana and any other controlled substances." The affidavit completely failed to establish any connection between controlled substances and Apt. 208. The affidavit further failed to allege a connection between Apt. 208 and any illegal activity. The facts alleged in the warrant are:

- Officers "received information" that William Ron Stephenson Jr. was staying at Apt. 208;

- Surveillance showed Stephenson, Michael Thompson, and Keaun Mitchell exiting Apt. 208;
- Two and a half months earlier, on November 27, 2016, Stephenson, Mitchell, and Summers had been victims of a shooting while riding in a vehicle;
- That same day, the two vehicles involved in the shooting were searched and multiple firearms were found in each vehicle;
- Stephenson and Mitchell were currently “wanted” on Wanton Endangerment charges;
- On February 6, 2017 (the day of the affidavit and search), officers observed Stephenson, Thompson, Stephonya Franklin, and Mitchell exit Apt. 208. Police initiated a traffic stop and observed firearms in plain view;
- Upon arrest at the traffic stop, officers found “several individually packs of marijuana” on Mitchell’s person;
- Franklin stated that she had seen multiple guns and ammunition in Apt. 208;
- The property manager stated that many people who are not named on the lease regularly come and go from Apt. 208.

The only mention of any narcotics in all of the alleged facts is that one person, Mitchell, had *on his person* several individual packs of marijuana, indicating perhaps that he trafficked in marijuana. The shooting incident from November did not involve narcotics. The two individuals who were currently “wanted” were not wanted for narcotics activity. The allegation of items seen inside the apartment was that guns were seen, not narcotics – and guns are legal. No one alleged any narcotics activity inside the apartment. A search of this apartment for narcotics was based **solely** on the fact that Mitchell was seen exiting the apartment and Mitchell was found to have

marijuana in his possession. There is no basis for believing that the marijuana was in any way connected with the apartment.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (internal citation and quotation marks omitted). In this case, a person named Mitchell was allegedly wanted on Wanton Endangerment charges and was arrested after exiting Apt. 208. Upon arrest he was found to have marijuana on his person. Other than the marijuana found on Mitchell's person, there is no mention of narcotics anywhere in the affidavit. There is nothing alleged connecting Mitchell to Apt. 208 other than he was arrested after exiting the apartment with a group of people. The presence of someone with narcotics in their pocket at a particular residence or business cannot possibly be sufficient to support a search warrant for that location. If that were the case, then every person who does not wish to have their residence or business searched will have to search the person of each individual who enters their property – a very intrusive and impractical proposition. Mitchell's private possession of contraband on his person cannot support a search warrant for every place he is observed exiting. That is an absurd suggestion. However, that is the basis for any nexus alleged in this affidavit. Given the well-settled state of the law requiring a nexus between the place to be searched and the evidence to be sought, it was not objectively reasonable for a well-trained police officer to believe that this affidavit alleged facts that constituted probable cause. Thus, the fruits of the search cannot be saved by the *Leon* good-faith exception to the exclusionary rule.

**Search of 7924 Zelma Fields Ave**:

The affidavit in support of the search warrant issued for Zelma begins by stating that on February 6, 2017, detectives executed a search warrant on 9200 Bunsen Park Drive Apt. 208. As argued above, that search was unlawful, and therefore it cannot be used as a basis for the Zelma search. If you remove all allegations pertaining to the Apt. 208 search from the affidavit in support of the Zelma search, the remainder does not establish probable cause to issue a search warrant for Zelma. The remaining alleged facts are:

- Chicoby Summers regularly comes and goes from Zelma, parks his car at Zelma, and has a key to the door at Zelma;
- On the day of the affidavit, April 12, 2017, officers performed a traffic stop on Mr. Summers in his vehicle after he came out of a residence at 1711 Wilson Avenue (which Google Maps shows is about 15 miles from Zelma). Mr. Summers fled on foot and hid inside a residence on Youngland Avenue.
- A search of Youngland revealed a firearm in the room Mr. Summers exited.
- A search of Mr. Summers revealed 2 hydrocodone pills in Mr. Summers' pocket.
- An officer found a small bag of crack cocaine in the area where Mr. Summers had been standing while in handcuffs.
- Police found that a firearm had been thrown from Mr. Summers' vehicle while being pursued by the police.
- Mr. Summers has a 2013 trafficking conviction.

These facts fail to establish probable cause that evidence of "Marijuana, heroin and any other controlled substances" would be found at Zelma. According to the affidavit, detectives observed the Zelma address on numerous occasions throughout February and March. What they reported learning from those observations was that Mr. Summers appeared to live at Zelma, and has a key

to the front door. The officers apparently did not observe any indicia of drug trafficking during those two months of surveillance. Without the information gathered from the unlawful search of Apt. 208, there is not sufficient evidence to allege that Mr. Summers is involved in trafficking activity, and there is especially insufficient information to support probable cause to believe that evidence of drug trafficking would be found at Zelma, 15 miles away from where Mr. Summers was arrested with two hydrocodone pills in his pocket. The single small baggie of crack cocaine found on the ground near Mr. Summers does not add anything significant to the equation. The traffic stop attempted on Mr. Summers occurred after he exited an address on Wilson Avenue, 15 miles from his residence, not after he exited his residence.

Any review of this warrant must address the clear reality that the affidavit did not mention any illicit activity being witnessed, by anyone, at the place requested to be searched. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). In this case the affidavit did not mention any illicit activity at the requested address, or even that Mr. Summers was currently engaged in drug trafficking.

The February search of Apt. 208, which is argued above to have been unlawful, is referenced multiple times in the affidavit to say that the February search had resulted in the seizure of a firearm, heroin, marijuana, drug paraphernalia, and a large amount of cash. Even if that information, which should be excluded from the affidavit, is considered in the analysis, probable cause is still lacking. There are still no facts in the affidavit that anyone has ever seen drugs at the residence or witnessed drug trafficking occurring at or near the residence. There are no allegations from any tipsters that drugs will be found at the residence. There are no

allegations from any tipsters that Mr. Summers was currently trafficking in narcotics. The fact that two months before, evidence of trafficking had been seized from a different residence associated with Mr. Summers is not a sufficient fact to create a nexus with Mr. Summers' residence at Zelma.

The complete lack of any connection of criminal activity to the residence requested to be searched would prevent any well-trained police officer from believing that this affidavit alleged facts that constituted probable cause to believe that the evidence sought would be found in the place to be searched. Therefore, the *Leon* good-faith exception cannot save the fruits of this search from exclusion.

WHEREFORE, for the reasons argued above, all evidence gathered and any statements obtained as a result of the unlawful search warrants executed at 9200 Bunsen Park Drive, Building 1, Apartment 208 on February 6, 2017, and at 7924 Zelma Fields Avenue on April 12, 2017 must be suppressed.

WHEREFORE, the defendant moves this Court to enter the Order attached hereto.

**RESPECTFULLY SUBMITTED,**

/s/ ***ROB EGGERT***
Rob Eggert
600 West Main Street
Suite 300
Louisville, Kentucky 40202
(502) 589-6190

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2017, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following all attorneys of record.

/s/ *Rob Eggert*
Rob Eggert